In the Matter of a Plan by MORTGAGE COMMISSION OF THE STATE OF NEW YORK with Respect to a Mortgage Covering 349 Lots of Vacant Land in Jackson Heights, Borough of Queens, Guaranteed by Bond and Mortgage Guarantee Company. (Guarantee No. 181,622.) QUEENSBORO INVESTING COMPANY et al., Appellants; FRED L. GROSS, as Trustee for Certificate Holders, Respondent-Appellant; JAMES F. DONLAN, for Bureau of Trust Supervision, Respondent.— Appeal by a certificate holder and his attorney from the order settling the final account of a trustee of a certificated mortgage. Cross appeals by the trustee and his counsel, by the R. F. C. Mortgage Company and by the Queensboro Investing Company, the owner of the mortgaged premises and purchaser of the certificated mortgage. Order modified on the law and the facts by granting the application of Henry Schoenherr for a counsel fee of $500; by striking out the provision that the $10,800.99 on deposit in the reserve fund belongs to the trust estate and should be paid to the trustee, and by providing, instead, that the said sum belongs to Queensboro Investing Company and directing the trustee and the agent of the R. F. C. Mortgage Company to consent to payment to Queensboro. As so modified, the order, insofar as appealed from, is affirmed, with $50 costs and disbursements, payable out of the estate, to each of the parties filing briefs. The court-approved sale of the certificated bond and mortgage to Queensboro Investing Company for $147,000 was made subject to taxes and to the unpaid balance of the R. F. C. Mortgage Company mortgage, with the trustee reserving any claims against the guaranty company and "any interest in any funds" which the "trustee, held or thereafter might hold." The rights of the parties in the so-called "reserve fund" are controlled by the mortgage made to the R. F. C. Mortgage Company pursuant to the plan adopted in 1940 authorizing the extension and modification of the certificated mortgage and its subordination to the mortgage made to the R. F. C. Mortgage Company. The $868.77 surplus derived from the sale of lots in 1943 was properly paid into that reserve fund. The additional sum of $9,932.22 was paid into the

fund on May 31, 1944, pursuant to an order made January 17, 1944, from which no appeal was taken by the trustee. The trustee, upon the closing held on December 31, 1940, pursuant to the final order of reorganization, had agreed that refunds obtained from the reserve set up by the Superintendent of Insurance to cover alleged servicing charges would be paid into the reserve fund immediately upon receipt thereof by the trustee. It is not disputed that under the terms of reorganization, Queensboro was required to sell a stipulated number of lots prior to the actual closing date and that the refund obtained from the Superintendent of Insurance was derived from the sale of such lots. The trustee does not now contend that the payment of the refund moneys *into* the reserve fund was improper. Indeed, at the 1940 closing he consented to the payment of other moneys not required for the payment of then accrued taxes into the reserve fund. The trustee claims, however, that upon payment of the refund into the reserve fund, he was entitled to have the moneys paid out to him. Under the provisions of the reserve fund, moneys paid into that fund were to be accumulated as a reserve for the payment of accrued and next-accruing taxes and interest on the R. F. C. Mortgage Company mortgage and thereafter any balance was to be applied semiannually in equal parts to payment in reduction of the R. F. C. Mortgage Company mortgage and in reduction of the certificated mortgage indebtedness. It is undisputed that at the time the refund was obtained from the Superintendent of Insurance and at the time that the trustee observed the court order by paying the refund into the reserve fund, there were arrears of taxes exceeding the amount of the moneys in the reserve fund including the refund. Reasonably construed, the provisions governing the maintenance of the reserve fund required moneys paid into the fund to be applied first to the reduction of tax arrears existing at the time the moneys were obtained by the fund. Since all of the moneys in the reserve fund at the time of the sale of the certificated mortgage to the Queensboro Investing Company were properly allocable to taxes, the trustee had no "interest", as such, in the reserve fund. The attempted reservation to the trustee of such an "interest" was therefore ineffective. Under the stipulation entered into on the closing of the sale of the certificated mortgage, Queensboro paid taxes to the extent of the moneys available in the reserve fund but became entitled to be reimbursed therefor out of the reserve fund moneys by way of subrogation. Had these reserve fund moneys not been allocable to taxes, and had they constituted a genuine surplus, such surplus would have been distributable, at least in part, to the R. F. C. Mortgage Company. We point this out to show that in no event was the trustee entitled to an order directing the payment of the entire reserve fund to him. Henry Schoenherr, attorney for the certificate holder Flynn, rendered services of value to the trust estate in obtaining disapproval of the prior offer to sell the certificated mortgage for $117,000 less 5% brokerage commissions. (*Matter of Bond & Mortgage Guarantee Co.* [*Guarantee No. 181,622*], 267 App. Div. 958.) He should have been allowed compensation in the amount requested, $500. The allowances to the trustee and to his attorneys were adequate and should not be increased. Carswell, Johnston, Adel and Lewis, JJ., concur; Hagarty, Acting P. J., concurs in result.